

U.S. Department of Justice

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 SEP -9  P 12: 00

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

United States Attorney
District of Maryland
Northern Division

Rod J. Rosenstein
United States Attorney

Christine Manuelian
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4852
MAIN: 410-209-4800
FAX: 410-962-9293
TTY/TDD: 410-962-4462
Christine.Manuelian@usdoj.gov

July 29, 2011

Jonathan Van Hoven, Esquire
1 N. Charles Street, Suite 1215
Baltimore, MD 21201

    Re:   United States v. Nadeem Akhtar
           Criminal No. JFM-10-0103

Dear Mr. Van Hoven:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges him with conspiracy to commit export violations and defraud the United States in violation of 18 U.S.C. § 371 and 50 U.S.C. § 1705(a). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.    First, that between in or about October 2005 and the date of the Indictment, the Defendant agreed with one or more persons to: commit an offense against the United States, that is, to knowingly and willfully export and cause to be exported certain goods and technologies from the United States to Pakistan without having first obtained the required licenses and authorizations from the Department of Commerce in violation of 50 U.S.C. § 1705(a); and defraud the United States by impairing, impeding, and obstructing the lawful governmental functions of the Department of Commerce.

Revised 11/5/09

  b. Second, that the Defendant knowingly and intentionally became a member of the conspiracy;

  c. Third, that one or more members of the conspiracy knowingly committed at least one of the overt acts in Maryland charged in the Indictment to further some objective of the conspiracy.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 5 years imprisonment, a term of supervised release of 3 years pursuant to 18 U.S.C. § 3583(b), and a fine of $250,000 pursuant to 18 U.S.C. § 3571(b). In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

  a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

  b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

Revised 11/5/09  2

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory

Revised 11/5/09           3

guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6.  This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

The Defendant, Nadeem Akhtar, a Pakistani national and lawful permanent resident of the United States, was the owner of Computer Communication USA (CC-USA, a/k/a CCI-USA), a company that he incorporated in Maryland and falsely claimed to be a subsidiary of a Pakistani company called Computer Communication International (CCI). The Defendant and his co-conspirators utilized CCI/CC-USA to obtain nuclear-related commodities and materials in the United States for subsequent export to restricted entities in Pakistan in contravention of the prohibitions and licensing requirements of the Export Administration Regulations (EAR). These restricted entities included organizations of concern to the United States government identified in the EAR Entity List as acting contrary to the national security or foreign policy interests of the United States. Exports of commodities to these organizations were prohibited absent authorization from the Department of Commerce, Bureau of Industry and Security, through issuance of an export license. These restricted entities included: (a) Pakistan's Space and Upper Atmosphere Research Commission (SUPARCO); and (b) the Pakistan Atomic Energy Commission (PAEC) and its subordinate entities, such as the Chasma Nuclear Power Plant I (CNPP) (a/k/a CHASNUPP) in Kundian, Pakistan, and the research reactor maintained by the Pakistan Institute of Engineering and Applied Sciences (PIEAS), a constituent institution of the PAEC in Nilore, Pakistan, specializing in nuclear-related research and development.

The Defendant took direction from the owner of a trading company located in Karachi, Pakistan, who had business relationships with various governmental entities in Pakistan. This individual would obtain orders for nuclear-related and other commodities from Pakistani government entities, such as SUPARCO, the CNPP, and the PIEAS, and then direct the Defendant as to what commodities to purchase in the United States for export to Pakistan, and the methods to be used to conceal the true nature, value, and end-use/end-user of the items. The Defendant would then negotiate prices with manufacturers and suppliers of the commodities sought in the United States, place the orders for said commodities, and arrange for shipment of said commodities, usually through a freight forwarder in the United States. The Defendant's co-conspirators included various individuals in Pakistan, Dubai, UAE, and New York associated with the owner of the Pakistani trading company.

As a means by which to evade export regulations and licensing requirements,

including the filing of a Shipper's Export Declaration (SED), the Defendant and his co-conspirators would undervalue the items being exported from the United States, thus avoiding scrutiny of the shipments by the United States government. For example, the Defendant would falsely identify to freight forwarders relevant details regarding the items exported by providing a CCI/CC-USA invoice that contained false descriptions of the items and their true value, and that failed to reveal the ultimate consignee or true end-user. The Defendant and his co-conspirators would also conceal the true end-users of the commodities they sought for export by utilizing third parties and/or real and fake business entities/locations in Pakistan, Dubai, and the United States to pose as the ultimate consignee/purchaser of the commodities, and/or to obtain the commodities from their United States manufacturers and suppliers. The Defendant utilized individuals in California and Illinois to procure items for him in the United States under false pretenses. On some occasions, the Defendant had items sought for export shipped to his residences in Maryland so it would appear as though his company was the actual purchaser/end-user of the items. The Defendant and his co-conspirators would usually transship the items exported from the United States through the UAE as a further means of concealing the true destination and end-use/end-users of the commodities.

The owner of the Pakistani trading company from whom the Defendant took direction generally charged the ultimate Pakistani end-users of the exported items more than the actual cost paid for each item, as well as all associated shipping costs, in order to garner a profit for himself and his company. He usually paid the Defendant a commission of approximately five to seven and a half percent of the cost of each item the Defendant obtained for export from the United States.

The Defendant and his co-conspirators conducted their unlawful procurement activities by using their personal and business e-mail accounts to communicate with each other, with the Pakistani government entities seeking U.S. commodities, and with third parties and companies in the United States. The Defendant used and accessed his e-mail accounts while in Maryland, as well as while he was overseas, to further his unlawful procurement activities. The Defendant and his co-conspirators wire-transferred funds from Pakistan and Dubai to individuals and bank accounts in the United States, including the Defendant's personal and CC-USA bank accounts in Maryland, to pay for the costs associated with obtaining and exporting commodities from the United States. The Defendant used the monies in his Maryland bank accounts to pay the manufacturers/suppliers of the commodities being purchased, third parties procuring commodities on the Defendants' behalf and at his direction, and any other expenses associated with obtaining and exporting the commodities. The Defendant and his co-conspirators also used their personal and business credit cards, as well as credit cards belonging to third parties, to make payments relating to the purchase of the unlawfully exported commodities. Finally, the Defendant utilized a mail box maintained at a retail shipping and business service

center in Maryland to continue to further his unlawful procurement activities during those periods of time when he was out of the United States.

The nuclear-related items unlawfully procured and exported, or attempted to be procured and exported, by the Defendant and his co-conspirators included radiation detection devices, resins for coolant water purification, calibration and switching equipment, attenuators, and surface refinishing abrasives. These commodities are were either specifically identified on the Commerce Control List of the EAR (because of their potential use in both commercial as well as military or nuclear applications), or classified as EAR99 items. Items in both categories were subject to additional licensing requirements of the EAR if exported to an end-user of concern or if exported in support of a prohibited end-use, such as activities related to related to nuclear explosives, nuclear reactors, or the processing and production of nuclear-related materials. In addition to the items identified in the Indictment, the Defendant and his co-conspirators unlawfully procured and exported, or attempted to unlawfully procure and export, other items for restricted entities in Pakistan, including, but not limited to, mechanical and electrical valves, cranes and scissor lifts. The total worth of the items unlawfully obtained, or sought to be obtained, by the Defendant and his co-conspirators for export to Pakistan exceeded $400,000.

## Advisory Guideline Calculation

The parties agree that pursuant to U.S.S.G. § 2M5.1(a)(1)(A), the base offense level is 26, which accounts for the evasion of national security controls or controls relating to the proliferation of nuclear weapons or materials. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. **The resulting offense level is twenty-three (23).**

7.   The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The Defendant reserves his right to bring to the Court's attention for consideration in sentencing the factors contained in 18 U.S.C. § 3553(a).

### Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence at the low end of the applicable guidelines range and move to dismiss any open counts against the Defendant.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed, including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the range of 46-57 months imprisonment and (ii) this Office reserves the right to appeal any term of imprisonment to the extent that it is below the range of 46-57 months imprisonment.

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

12. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

13. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept the parties' sentencing recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

14. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case with respect to the charges set forth in the Indictment, the factual stipulation herein, and the evidence known to the government as of the date of this agreement. The Defendant

Revised 11/5/09         8

acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Christine Manuelian
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9/6/11
Date

_____
Nadeem Akhtar

I am the above-named Defendant's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

9/6/11
Date

_____
Jonathan Van Hoven, Esquire